Good morning, Your Honors, and may it please the Court, my name is Sarah Mahoney on behalf of the petitioner, Mr. Nery Martinez, and I would like to reserve two minutes for rebuttal. Thank you. Mr. Martinez, born in El Salvador, has spent most of his life in the United States on temporary protected status, raising his United States citizen children. He now faces banishment as a consequence of a removal order with multiple layers of error. At the crux of my argument, the main legal error was by the Immigration Court when they completely ignored procedures for addressing competency, which led to Mr. Martinez being deprived of qualified representative and counsel. Having to represent himself, he argues complex areas of the law in his second language to exhaustion, and to the extent that he didn't exhaust these issues is another indication of his incompetency. Thus, we argue that there were due process issues in this case, as well as a failure to review his claims under the Convention Against Torture, as well as his claim that his convictions were not crimes involving moral purposes. Mr. Mahoney, there were a number of hearings, as I understand it, over the course of time. I think it began in 2012 and stretched out for some six years with 20-some hearings. Why is it your view that the court didn't provide adequate process or didn't adequately inquire into his level of competency? Yes, Your Honor, I'd love to address that. It starts with where Mr. Martinez was found competent by the court. She was given notice of his Franco Gonzalez class membership while he was detained. This notice contained that he had major depressive disorder. Now, under both Franco Gonzalez as well as matter of MAM, the immigration judge was under procedural process to do a judicial competency inquiry, and to the extent that she did, she did not ask for an independent evaluation, and she did not inquire about his competency any further by asking questions, as well as— You know, the judge is eyeballing the petitioner just like you and I are today, and you don't have to have a competency hearing in every occasion. You have to have sort of a triggering threshold of some kind of behavior. It looked to me like the IJ was sensitized to the competency issue, was alert for any issues that may be coming up, recommended, I think, some things that he might do to get legal help. So why was that not enough? Yes, Your Honor, that was not enough because under matter of MAM there are processes, especially when there's notice of Franco Gonzalez membership because of the right to counsel that that may extend to the petitioner. So she needed to collect those medical records, and in fact, needed to collect those medical records in order to finish her competency decision. Even if it seemed that he understood the nature of the hearings and the consequences, and as Judge Donato just pointed out, was able to follow up on, you know, with state court filings, what's the threshold for needing to ask for those records? At what point does that trigger? Yes, Your Honor, we look to Calderon-Rodriguez. The Ninth Circuit has explained that DHS has to comply with these medical records, and they do, in fact, in that notice say that they will give these records to the judge. She even makes an extension in the record saying that she needs these medical records in order to make a competency finding. That's on page 309 of the record. Wait, I'm sorry. What was the authority that you cite to indicate that the IJ must request those records? Calderon-Rodriguez, Your Honor. The immigration judge must adequately ensure that DHS complies with its obligation to provide the court relevant materials. It was clear that there were medical records that would determine whether or not he was mentally competent to go forward, and in the case where under direction based of MAM they are to even reevaluate these records, she can't make a finding without understanding the context of those records, and there's even a footnote in Calderon-Rodriguez, footnote two that specifically states that in order to make that competency finding, the court cannot do so without looking at those records, and so they remand. So you're saying that once the immigration judge knew about the major depressive order, all these requirements kicked in? And the fact that she knew that there were medical records, yes, Your Honor, and now we have a series of processes which were instated during the time that comply with this idea in Calderon-Rodriguez that competency can't be determined without those records. Now there's an independent evaluation in their ways. Remind me again how the IJ knew that, that those records existed? Yes, Your Honor. In the notice, DHS explains that they are put on notice based off those medical records in detention, as well as the fact that the respondent at the time of petition now makes a plea to ask if she needs those records, and actually after her decision, she states that she doesn't need them, even though before so, she had said that she couldn't make a decision without them on page 324 of the record. Courts all the time receive information that folks have mental health issues, all the time, in district court, IJs, all of them. And every time you receive information that someone has mental health determination, didn't the IJ comply exactly with what they were supposed to do? They asked very specific questions, in fact, they outlined exactly what this particular petitioner had done in defending their case. I understand that, Your Honor, but we argue no. She did not follow procedural process here, and she cannot make a determination based off of the inadequate evidence that she had before her, especially under a Franco-Gonzalez notice. I think that's the distinction, and Calderon-Rodriguez, that's exactly what happened. They get the notice, they understand the disorder, and they don't ask and inquire about the medical records. You seem to be saying that whenever a judge has notice, quote-unquote, of some type of potentially debilitating condition, the judge has to immediately turn the adjudication of competency over to someone else, a medical expert, is that what you're saying? No, Your Honor. The judge just merely needs to have all the evidence before her in order to make a conclusion on the matter, and this is, again, procedural process, especially in the immigration court context where they're detained. It's exactly what Franco was for, was to protect these detained incompetent respondents from representing themselves. That takes me to my second point, where there was a violation of due process by insisting on the crime-involving moral turpitude conclusions to the extent that they denied his ability to litigate the issue, and this just extends further to his potential... How was he denied the ability to litigate the issue of crime-involving moral turpitude? Yes, Your Honor. So under the immigration judge's explanations of what the CIMTs were, what his convictions stood for, she repeatedly explained to him that his convictions were CIMTs and that he No, I understand that, but what precluded him from being able to raise arguments or evidence in contradiction to what the IJ believed? I think this extends to the fact that he didn't have a qualified representative, but further... Which unfortunately happens all the time, but, you know, in any event. So I take your point that the IJ seemed somewhat definitive that he had been convicted of CIMTs, but I'm not seeing where he was precluded from being able to raise argument or evidence in that regard to push back or to try to persuade the IJ to a different point of view. Yes, Your Honor, but to the extent that there was indication that he could even litigate, she doesn't explain his burden of proof, she doesn't explain any... It does explain how to work on his post-conviction relief to the extent that she says that he could potentially vacate the order, and he does pursue that to the extent that he understands it. However, it's never explained to him that he could ever litigate these issues. She brings up many times in the record how conclusory these are CIMTs, even though these domestic violence convictions were not necessarily CIMTs. Well, let me ask you about that, because you concede that his first conviction in 2009 is a CIMT, correct? Yes, Your Honor. And so my question is, it seems as if the parties in the agency went down the path that this is a divisible statute, and I wonder about that because it seems as if everyone just presumed that 273.5 is divisible and then started looking at whether his particular conviction is qualified, but I guess, explain to me why it's a divisible statute. Yes, we do argue that the modified categorical approach applies based off Morales-Garcia versus Holder, the corporal injury against... Well, Morales-Garcia didn't reach the question of divisibility, it only said that it's not categorically a CIMT. Oh, yes, Your Honor. I mean, I think you're one to rely on Cervantes, which was a subsequent panel that found it to be divisible, but as I read Cervantes, that predates Supreme Court precedent that talks about our divisibility analysis being whether these are separate elements of a crime as opposed to separate alternative means of committing the same crime. Yes, Your Honor, and to the point of deciding on divisibility, I think based off Cervantes, you can break down those elements and those violations to the extent that a cohabitant, for example, is being injured versus a spouse and see that those are distinguished and divisible violations. Those are, I guess, you could call it different victims. How is that a different element? How does that create a distinct crime of committing the same injurious conduct to one person versus another and then receiving the same types of punishment? To the extent that I understand your question, Your Honor, I think it goes to the fact of the CIMT analysis. The whole distinguishing factor during this analysis is whether or not there's a relationship that we hold to a standard of if they were to violate, this would be a CIMT because it's so morally turpitudious. And that's what Morales-Garcia explains is that if it was a cohabitant, we as a court do not see that as an extension of a CIMT and likely why it would be divisible under Cervantes. Can I, first on the issue of adequate representation, I think you're doing this pro bono, so thank you very much. Thank you, Your Honor. It's good to have this. More of you need to be doing it. All of you out in the gallery who may be practicing lawyers. I do have a question to follow up on Judge Sanchez's. I mean, we can't even reach the CIMT issues under Santos-Zacharia, can we? I mean, it's been waived, wasn't raised for whatever reason, so we need not get into any of that, do we? We argue that we can, Your Honor. To address the exhaustion argument that the respondent had under Pareda, it's not a question of what was presented, it's just a question of what was decided. And Pareda was not yet the law at this point. And under Santos-Zacharia, this is a claims processing rule, which gives the court permission to consider arguments where there is a decision by the board on this issue. Well, let me jump in. The BIA did not, because the issues weren't presented to it, they did not do a substantive ruling on the CIMT questions, did they? Well, to the extent that they, we argue that they did, Your Honor. The board does at length address the CIMT issues. They explain how... I think all they said was he didn't contest them. They didn't go into the discussion you had with Judge Sanchez or anything like that. Yeah, and then, yes, Your Honor, you're correct. To the extent that that is the case, we argue that the court still has jurisdiction in the matter, because in order to understand whether or not the court has jurisdiction, you have to analyze these CIMTs to see if he is actually barred under the statute. Did you want to receive your remaining time for rebuttal? Yes, Your Honor. Thank you. Okay. For the foregoing reasons, we respectfully request this court to reserve the agency's decision and to remand the case for further proceedings. Thank you so much. May it please the court. My name is Walter Bocchini, Your Honor, for the respondent, Attorney General. Your Honor, as a threshold matter, as the position of the government, the court shouldn't reach the removability aspect of this case, because as the court pointed out, the petitioner, the board never reached this issue, and it certainly wasn't raised by the petitioner on his appeal brief to the board. In fact, he took the issue off the table completely in his appellate brief to the board when he conceded that he was removable for a CIMT. Can you get to the first issue that was discussed at length, the issue of competency? At what point should, or what level of inquiry should an IJ have into the issues of competency when they're advised of this major depressive disorder? Should there be more? Should it be, as counsel has suggested, a request to go and gather those medical records before making a determination of whether or not they're competent? I think in this court's decision, in Calderon-Rodriguez, that came along in 2018, the court did say that DHS has a duty to provide medical records, but, you know, the issue of competency was raised by the Department of Homeland Security back in 2013, I believe, yes, June 2013, which mandated Calderon. The immigration judge took it very seriously. The immigration judge immediately accepted that there was an indicia of incompetency and then proceeded to assess. Now, when Calderon came along in 2018, at that point, the petitioner was no longer- But I think counsel's point to be a little different and nuanced in this sense. They're saying that in order to have a full analysis by that IJ, in order to make sure that the competency is clearly evaluated, that there is this missing piece, and the missing pieces are those medical records. And she has argued to this court that without that, the IJ was unprepared to make that finding of competence. Your Honor, a matter of NAM, which is the agency's decision on this, doesn't require those documents. The most important aspect is whether the immigration judge is able to observe an indicia. Well, obviously, certainly, if there are documentation from DHS that there is an indicia, it should be reviewed. But the immigration judge in this case, as the court pointed out- I don't know what authority she cites for that, but is that essentially, then, what she's arguing? I believe she's arguing that this court's decision in Calderon should apply. But again, this court's decision in Calderon post-dates the IJ's initial determination of competency. But, again, this is not a- But doesn't the IJ have an ongoing- track the timeline for me. There were many hearings here. Were there hearings subsequent to when Calderon was issued? The immigration judge revisited competency in January 2018. I'm not entirely sure if the Calderon predates that. I don't believe so. But the fact of the matter is that both immigration judges accepted the fact that this is not a static condition, as pointed out by the agency, a matter of NAM. And they came back to the issue every time. And when the petitioner was before, the first time IJ still, you know, the IJ questioned him whether he was taking medications, whether he was under the care of a psychiatrist. He said no. Obviously, by that time, she had already had- the IJ had already had extensive contact with the- And during this time, he was appearing at arguments. He was representing himself. He was filing briefs. He filed an appeal with the BIA. There was no manifestation of odd behavior or anything else that I saw on the record. Maybe you know. So, I mean, in the face of all that, is it really the IJ's duty to take that next step and call in a medical expert and start looking at medical records? No, Your Honor. I don't think that any of that is required. I think Calderon limits itself to the question of whether there is an indicia and what is required for the IJ to make that determination. Whether there's an indicia that precedes the second step. Here, the IJ, simply as she should have, accepted that there was an indicia and then went on to reassess. And again, very extensive contact and conversations with the petitioner. And he was never inappropriate. He seemed to always be taking- paying attention, taking notes, responding to the immigration judge's requests, and obviously proceeded to litigate his case as a pro se petitioner. So, he didn't always go to the right- make the right request, but he did achieve quite a bit in seeking post-conviction relief. And they'll tail into the other issue with respect to the due process claim. First I would argue that this was not raised before the agency, so it's also unexhausted. And this is an issue that the board could have rectified if there had been one. But I would disagree that the immigration judge- The IMT issue. Oh, I'm sorry, Your Honor. I'm talking about the due process argument. Oh, okay. All right. Yeah. I was able to litigate it. And the petitioner had every opportunity, but I just want to point out and emphasize the fact that the IJ kept talking about his convictions and the fact that they seemed to be so definitive as guarantee, because that was the state of the law at the time. This was after the Young decision. The visibility was still fully considered, even aside from any elements, means consideration. But even more than that, he no longer had status, and that didn't turn on a CIMT determination. He lost his status when his temporary protected status was withdrawn based on the fact that he had multiple misdemeanors. And there's never been any argument that he somehow kept his TPS status. So even if the CIMT issue was taken off the table, the immigration judge emphasized the point repeatedly. You have multiple misdemeanors. You have to go seek post-conviction relief on these convictions. That's the only way you're going to be able to overcome that. And I think that's why she kept pressing on it. Obviously, the petitioner wasn't ultimately successful. But this was an attempt by the IJ to help a pro se petitioner litigate his case. And again, as to the specific CIMT issue, I don't think there was really any question that this would have been a CIMT until this court's decision in Marine Larina came along in 2019, which was then overturned by Pareda in 2021. But up until Marine Larina, that space between Young and Marine Larina, divisibility broke in the government's favor. I'm sorry, the burden of proof broke in the government's favor, as it does now, again, following this current court decision. But we only get to the burden of proof question if we find that the statute is divisible. And I understand there's a Ninth Circuit panel in Cervantes that found this statute divisible. But I guess my question is, I wonder if that's right in light of Mathis and De Camp and Supreme Court decisional authority that asks us to look at the elements themselves, not whether there's a special relationship between the offender and the victim. So what's the government's view about divisibility? We certainly understand that Cervantes came before Mathis and De Camp, and they didn't analyze that issue very carefully. As it stands today, well, again, I have to point out this is not an issue that was raised at any point, again, before the agency. This was not exhausted, and our view also has been waived. But yeah, at this point, certainly Mathis and De Camp changed the focus, and Cervantes is not necessarily, did not take that into consideration of the elements and means aspect of it. Whether it's divisible today, I think that's an open question. There is no case law, as far as I could tell in California, from the California courts that settles it definitively. So Mathis and De Camp isn't irreconcilable with Cervantes. But certainly, I think that a reassessment could be made in the future. But under Santos-Zacaria, we're not in a position to reach all that, is that right? That's our position, Your Honor. Even though exhaustion is no longer jurisdictional, it is still mandatory. And as to the point the petitioner made, that the court has jurisdiction to determine its own jurisdiction, that's certainly correct. But the court never before reached the merits of a claim that was not exhausted. And they shouldn't now, post-Santos now, write that 1252-D1 off the books because it's no longer jurisdictional. It is still mandatory, with the only two exceptions recognized by the Supreme Court being waiver and forfeiture. So now I can ask what I asked earlier. So your colleague says the BIA did actually make a substantive ruling on the CIMT issue. Yes, Your Honor. For the reasons we said in our brief, we disagree. We think that there was a very separate issue that the board addressed. The board first stated that petitioner had conceded removability, but then addressed what effect his sentence modification would have had on relief from removal. And from the government's view, that is very different from assessing the merits of whether a conviction is a crime involving moral turpitude. The board really was looking into whether he was somehow eligible for cancellation of removal or NACARA. And because the sentence modification didn't change anything, he still had a CIMT that would render him ineligible for both. So obviously a little trickier with respect to NACARA cancellation of removal, I think it's clear that he would have been ineligible if he didn't have, he would have been ineligible even if he didn't have, even if the petty offense exception applied. Whereas for NACARA, I think that's an open question in this court. If the petty offense exception applied, I think that would have been an issue that he might have still been eligible for NACARA because the statute, this cancellation statute is written differently than a NACARA statute. And I think that's why the board actually went and emphasized this relief from removal aspect that because he has two convictions, the petty offense exception does not apply and therefore that bars him from both of those reliefs from removal. What about the third conviction for violating the court order? Would that, there hasn't really been much discussion about whether that's a CIMT or would that preclude him on these other forms of cancellation of removal? It certainly would preclude him with respect to cancellation of removal for the same reason that the CIMT does because the cancellation of removal is a statute that cross-references other criminal grounds and the crime of domestic, I'm sorry, I'm jumping ahead. That crime bars him as a crime of domestic violence. The government is not taking any position on whether that crime is a crime involving moral turpitude. But certainly the crime is a crime of domestic violence categorically by this court. Violation of a domestic violence restraining order is a crime of domestic violence? We've held that? I think that the, it's categorically a crime that, yeah, I'm sorry, I'm confusing the two. I think it's, his 273.5 crimes are categorically a crime of domestic violence. Right, but the third one, the one about violating a court order. There is a case from the court that also says that this is also categorically a crime of the removable ground for violating a court order, which it's in the same provision as crime of domestic violence in the 237A2E, I think it's A2E2. But so those convictions could have consequences, immigration consequences. It wasn't litigated here. Right. I see, oh, my time's up. It wasn't litigated here because we didn't have to, because the petitioner conceded the being litigated, I think the immigration court would have had to drill down more because certainly, again, there's no debate that he lost his temporary protected status with the multiple misdemeanors. At that point, he's certainly here without status, and he would have to seek relief. And under the relief stage, those convictions could have all been at issue. But none of that was litigated because he conceded the CIMT issue and essentially took those off the table. Anything else? No, Your Honor, unless the court has any more questions for me. Thank you.  Mahoney? Your Honors, I'd like to touch on jurisdiction for a moment. The jurisdiction stripping provision does nothing to take away from review of constitutional claims as well as questions of law in this case, and the court has jurisdiction to determine its own jurisdiction, specifically whether the petitioner's convictions trigger jurisdiction stripping under Doss v. Holder. Review of the convictions here would lead the court to a finding that there is jurisdiction in this case, or they should remand in order for the board to review or the agency to review these convictions. Again, there are legal errors within their CIMT analysis that need addressing, and to the point of exhaustion, the claims processing rule to review these errors apply. The board, to the extent that they addressed it, Mr. Martinez included his sentence modifications within his appeal brief when he filed with the board, and then the board addresses in a footnote the petty offense exception, as well as goes over why his crimes are—goes over his removability to the extent that his crimes are CIMTs. And this also goes back to the fact that he wasn't potentially found incompetent like he should have been in the beginning, which gave him due process issues to a full and fair hearing when he did not receive qualified representation. This all would have been fixed if he had counsel throughout proceedings, and these would have been exhausted issues at this point. The court must, again, make a decision to decide whether there is jurisdiction in this case, whether the bar actually applies or remands for further review. To turn to my point of competency, this is not an ask for an expansion of matter of MAM. Calderon was good law before the final order by the second judge, as well as the fact that it's just an interpretation of MAM and is consistent with matter of MAM as it is applied. The nature and objectives of her—the understanding of his understanding of the nature and objectives of proceedings was unclear by her determination. She makes a determination that he's competent based off face value predisposition that she understood. He was able to file things on his own, but that is not the proper procedure, nor is that the standard under matter of MAM. He looked on the surface to understand things, but he had major depressive disorder, something that affects his cognitive abilities, as well as his understandings of proceedings and their examples throughout the record, that there's further indications of that throughout proceedings, whether you look at his frivolous UV's application where he says, I was on a lot of medication, I had people helping me, I didn't know what was going on, I was stressed. Ms. Mahoney, you're running a little bit over. You want to wrap up? Thank you, Your Honor. I appreciate that. And to conclude, the court should remand for further proceedings of the matter. Thank you. Thank you. And thank you for your pro bono representation. It's very appreciated. Thank you, Your Honor. I appreciate it. The matter will stand submitted.
judges: SANCHEZ, MENDOZA, Donato